Argued and submitted June 7, Court of Appeals reversed, order of trial court reinstated and affirmed September 21, 1982

In the Matter of the Marriage of

TAVARES, aka Bordier,
*Respondent on review,*
*and*
TAVARES,
*Petitioner on review.*

(CA A20093, SC 28448)

651 P2d 133

John C. Anicker, Jr., Oregon City, argued the cause and filed a brief for petitioner on review. On the petition for review was Kevin D. Flynn, Hayward, California.

David A. Kushner, Estacada, argued the cause and filed a brief for respondent on review.

Before Denecke, C. J.,** Lent, Linde, Peterson, Tanzer, and Campbell, Justices.

PETERSON, J.

---

** Denecke, C. J., retired June 30, 1982.

## PETERSON, J.

In 1973 the Oregon age of majority was lowered from 21 to 18. Or Laws 1973, ch 827, § 14 (codified at ORS 109.510). As part of the same law, the legislature enacted ORS 107.108, which authorizes an Oregon domestic relations court to provide for the support of children over 18 and under 21 who are attending school. *Id.*, § 12b.

In 1972, California lowered its age of majority from 21 to 18, effective March 4, 1972. 1972 Cal Stat 50, ch 38 (codified at Cal Civ Code § 25.1). However, California enacted no provision for support for children over 18 years. The issue in this case is whether an Oregon court, following registration of a California decree of dissolution in Oregon, and having personal jurisdiction over the parties, can alter the support obligation of the noncustodial parent (the obligor) to order support for an Oregon child over 18 attending school, when such a provision for support could not be imposed under California law.

## I
## PROCEDURAL HISTORY

The procedural history of this case is somewhat unusual, and is relevant to the decision on the merits. The petitioner and respondent (herein referred to as "Mother" and "Father") were divorced in California in 1975. The decree gave custody of the four minor children to the mother and provided:

"2. Respondent shall pay to Petitioner as and for the support of said children, the sum of $75 per child per month for a total of $300 per month commencing June 1, 1975."

At all times since 1975, Father has resided in California and continues to reside there. Mother and the four children moved to Oregon in 1978, and continue to reside in Oregon. Father is current on all support payments required to be paid under the provisions of the California decree.

In 1980, Mother filed a pleading in the Clackamas County Circuit Court entitled "Motion for order to show cause and for modification of foreign decree to provide for

increased child support" which, after reciting many of the above facts, alleged as follows:

"4. The circumstances of the parties have materially and substantially changed since the entry of said decree and petitioner requires $125.00 per child per month during the minority of said children and $125.00 per child per month for said child or children between the ages of 18 and 21 years who are full-time students * * *."

The motion contained no request that the California decree be registered. It concluded with a prayer seeking modification of the decree:

"* * * to provide for respondent to pay petitioner the amounts of $125.00 per child per month while the children are under the age of 18 years, and the amount of $125.00 per month per child between the ages of 18 and 21 years so long as said children are attending school full-time."

Father made a general appearance. He did not question the trial court's exercise of power to modify the decree to provide for additional support for children under 18.[1] As to the claim for support for children over 18 attending school he claimed that the court was "without jurisdiction to order child support payments for any child over the age of eighteen" because of ORS 110.022(3), which provides:

"(3) 'Duty of Support' means a duty of support whether imposed or imposable by law or by order, decree, or judgment of any court, whether interlocutory or final or whether incidental to a proceeding for dissolution, separation, separate maintenance, or otherwise and includes, but is not limited to, the duty to pay arrearages of support past due and unpaid and the duty to pay support for a 'child attending school' as defined in ORS 107.108(4) where the other jurisdiction imposes the same or substantially similar duty of support."[2]

Following a hearing, the trial court entered an order which included the following "Findings":

---

[1] Father asserted, as a defense to any increase in child support, that his earnings had declined since 1975.

[2] ORS 110.071 provides:

"Except as provided in ORS 110.022(3), duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. * * *"

"1. The Original Decree and Judgment dissolving the marriage of the parties may be transferred and registered in this jurisdiction.

"2. Said decree and judgment should be modified to provide child support in the amounts of $125.00 per month per child for the three youngest children of the parties; * * * such support to terminate automatically for each child on said child's 18th birthday. The Court expressly finds as a matter of law that inasmuch as the laws of the State of California, the forum of the original Decree and Judgment, do not provide for child support for children between the ages of 18 and 21 years who are full time students, such support can not be adjudged or ordered to be paid by respondent as respondent remains a resident of California even should said children be full time students between 18 and 21 years of age and be otherwise entitled to child support under Oregon law. Support for this finding arises, inter alia, from the 'Duty of Support' definition in ORS 110.022(3)."

A final order was entered consistent with the findings. Father did not appeal the order increasing the monthly support for children under 18. Mother appealed, asserting that "[t]he fact that California law does not provide support for children between 18 and 21 years of age by a statute similar to ORS 107.108 does not prevent Oregon courts from providing such support for Oregon children who were residents of California when their parents' marriage was dissolved."

The Court of Appeals reversed, holding that under ORS ORS 110.281(1),[3] upon the registration of the California decree in Oregon, ORS 107.135(1)(a)[4] authorized

[3] ORS 110.281(1):

"(1) Upon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner."

[4] ORS 107.135(1)(a):

"(1) The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by law for service of a summons, to:

"(a) Set aside, alter or modify so much of the decree as may provide for the appointment and duties of trustees, for the custody, support and welfare of the minor children * * *."

Oregon courts to modify foreign decrees in the same manner as a local decree may be modified under that statute.

## II
## REGISTRATION PROCEDURES CONCERNING FOREIGN DECREES

The National Conference of Commissioners on Uniform State Laws first approved the Uniform Reciprocal Enforcement of Support Act (URESA) in 1950. With some modifications, Oregon adopted URESA in 1953. Or Laws 1953, ch 427. The Commissioners revised the Act in 1952, 1958, and 1968. The 1968 Uniform Act, entitled the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), was adopted in large part by Oregon and is contained in chapter 110 of the Oregon Revised Statutes. Or Laws 1979, ch 484, ORS 110.005.

The uniform reciprocal enforcement of support acts came into being because:

"With the increasing mobility of the American population the problem of interstate enforcement of duties of support became acute. A deserting husband was beyond the reach of process in the state where he had abandoned his family and the family had no means to follow him. Welfare departments saddled with the burden of supporting destitute families were often prevented from enforcing the duty of support in the state where the husband could be found by decisions holding that the duty existed only as to obligees within the state.

"The avenue of criminal enforcement was not more fruitful. Charges could be preferred against the fleeing husband but he had to be returned for trial to the state where the offense was committed. Extradition was both expensive and narrowly technical, and was often impossible to prove that he had 'fled from justice' for frequently he supported his family until he left the state and only left in order to get a job. Even if he were brought back and successfully prosecuted the result was disappointing. The proceedings rendered reconciliation with the family improbable, took him away from his job in the state to which he had fled, and by branding him a convicted criminal lessened the probabilities of gainful employment in the home state.

"* * * * *.

"The 1950 act * * * attempts to improve and extend by reciprocal legislation the enforcement of duties of support through both the criminal and the civil law. Its provisions are in addition to remedies now existing for the enforcement of duties of support within the state. Each state will enforce its own laws as before so long as the husband remains in the state, and the new act is meant to improve enforcement where the parties are in different states." Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference Meeting in its Sixty-first Year 291-92 (1952).

A Prefatory Note to RURESA, 9A ULA 644 (1979), states:

"The Act itself creates no duties of family support but leaves this to the legislatures of the several states. The Act is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another state * * *."[5]

RURESA and Oregon's version of RURESA has four parts: General Provisions (ORS 110.005-110.045, ORS 110.291); Criminal Enforcement (ORS 110.052-110.062); Civil Enforcement (ORS 110.071-110.272); and Foreign Support Orders (ORS 110.275-110.281). Civil enforcement procedures are generally (but not always) concerned with collecting arrearages and normally (but not always) involve an obligee in one state who seeks to enforce a decree against an obligor who has moved to another state. In this case, Mother and the children (the obligees) reside in Oregon. If any part of RURESA is applicable, it is the fourth section, which provides for the registration of foreign support orders. First approved by the Commissioners on Uniform Laws in 1958, and modified by the Commissioners in 1968, provisions for registering foreign decrees first became a part of Oregon Law in 1979, with the enactment

---

[5] See Clarkston v. Bridge, 273 Or 68, 539 P2d 1094 (1975):

"* * * The URESA is designed to provide an inexpensive, simplified and effective means whereby an obligee in one state can enforce the duties of support owed by an obligor in another state. * * *

"* * * * *.

"The URESA is a remedial statute designed to equalize the relative positions of resident and nonresident plaintiffs in support proceedings. * * *" Id. at 72, 79. (Citations omitted.)

of what is now ORS 110.275 to 110.281. Or Laws 1979, ch 484, §§ 43-46. The procedures are summary. An obligee seeking to register a foreign support order transmits three certified copies of the foreign support order, and modifications thereof, with other information, to the clerk. The clerk files the papers "upon receipt," the obligor is given notice by mail, and the registered support order is "confirmed" unless the obligor petitions to vacate the registration within 20 days after mailing of the notice of registration. ORS 110.275, 110.277, 110.281(2). Thereafter, the registered support order is "treated in the same manner as a support order issued by a court of this state." ORS 110.281(1); note 2 *supra*.

## III

## DISCUSSION

As stated, Father has never questioned the general power of Oregon courts to modify prospectively a foreign decree or otherwise to alter his support obligation for children under 18. Although we assume the existence of such power in this case, this court has never held that such power exists. In view of the lack of any objection to, and the absence of any appeal from that part of the trial court order increasing support for the children under 18, for the purposes of this opinion we will assume such power to exist.[6]

[6] Fifty years ago it was uncertain whether any foreign decree providing for future support could even be enforced in Oregon. *Cousineau v. Cousineau*, 155 Or 184, 63 P2d 897 (1936), established that it was proper to *enforce* a California support decree in Oregon, both as to accrued installments and as to prospective installments of support. 155 Or at 197-202. *Accord Schroeder v. Schroeder*, 271 Or 582, 587, 533 P2d 350 (1975). *Picker v. Vollenhover*, 206 Or 45, 290 P2d 789 (1955), also involved the establishment of a foreign decree in Oregon. In that opinion, it was thrice stated that the power of an Oregon court to *modify* prospectively a foreign decree was not before the court. 206 Or at 61, 66, 73. The existence of that undecided question was noted again in *Hatch v. Hatch*, 247 Or 588, 591, 431 P2d 832 (1967), and avoided because there was "no necessity for resolving the question now." This court has never decided whether, or to what extent, a foreign decree can be modified.

*Cf. Sutton and Gifford*, 53 Or App 309, 313-15, 632 P2d 4 (1981) (allowing modification of foreign support decree); *Woodruff and Woodruff*, 41 Or App 529, 534, 599 P2d 1182 (1979) (allowing modification of foreign support order as to future payments, noting that decree was modifiable in decree state); *State ex rel La. v. Phillips*, 39 Or App 325, 327, 591 P2d 1196, *aff'd on rehearing*, 40 Or App 547, 549, 595 P2d 1276 (1979) (allowing modification, in RURESA proceeding, of foreign support order as to future payments made within responding state); *State ex rel Nebraska v. Brooks*, 34 Or App 975, 978, 580 P2d 206 (Oregon is without jurisdiction in RURESA proceeding to modify foreign support decree) *opinion*

The trial court and the Court of Appeals treated this case as being governed by ORS chapter 110. Mother claims that the provisions of chapter 110 do not apply, that her motion to modify the California decree was in the nature of an original proceeding under *Walker v. Walker,* 26 Or App 701, 554 P2d 591 (1976). In that case, the Court of Appeals held that registration of the foreign decree was not essential to confer jurisdiction to modify support provisions of a Hawaiian decree and that where "all parties are domiciled in Oregon and subject to the personal jurisdiction of Oregon courts, modification is constitutionally permissible upon the same showing [as in Hawaii—the showing of "a material change in the physical or financial circumstances of either party"]." *Id.* at 706.

Undeniably, the instant case is not a typical RURESA proceeding because the obligees are in Oregon, the father is not a resident of Oregon, does not work in Oregon, and has no assets in Oregon. But if the substance of the case is examined, it has the mark of a case involving registration of a foreign decree. Mother established the existence of, and the trial court registered and enforced a California decree, as "modified." The Court of Appeals treated the case as involving the establishment of a foreign decree under ORS chapter 110. We do so as well. Even though ORS 110.281(1) states that the registered decree "shall be treated in the same manner as a support order issued by a court of this state," to treat thereafter the California decree as being as modifiable as an Oregon decree under ORS 107.135(1)(a) not only entirely overlooks ORS 110.022(3), it reads ORS 110.022(3) out of the statute.[7]

---

*withdrawn, result adhered to on other grounds,* 35 Or App 805, 807-08, 583 P2d 12 (1978) (withdrawing prior opinion and leaving open question of power of Oregon court in RURESA proceeding to modify foreign decree for support), *review denied,* 285 Or 73 (1979); *Walker and Walker,* 26 Or App 701, 707, 554 P2d 591 (1976) (allowing modification of foreign decree for support without registration of decree, also noting that decree was modifiable in decree state). Whether an Oregon court when not otherwise prohibited by statute can modify a foreign decree in a manner other than that which would be permitted if the modification were sought in the decree state is not before us.

[7] We do not otherwise consider the precise meaning of the phrase in ORS 110.281(1) that the registered decree "is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner." This language is identical to section 40(a) of RURESA. *Cf.* ORS 107.135(1)(a) (granting the court power to "set aside, alter or modify" a decree).

The "duty of support," as defined in ORS 110.022(3) is qualified by the express requirement that "the other jurisdiction"[8] (California, in this case) imposes the same or substantially similar duty of support. California does not impose the same or substantially similar duty of support. Whatever reason the legislature had for adding the final clause of ORS 110.022(3) to RURESA section 2(b),[9] we are required to give the clause effect.[10] This conclusion is also consistent with the choice of law rule of section 7 of RURESA, ORS 110.071, that the obligor's duty of support is determined by the laws of the state where the obligor is present.

The Court of Appeals is reversed. The order of the trial court is reinstated and affirmed.

-----

[8] The term "the other jurisdiction" is not defined in ORS chapter 110. It is uncertain whether that phrase refers to the state in which the decree was entered or the state "where the obligor was present for the period during which support is sought." Any difference is irrelevant to the case at bar, because Father was, at all times, a resident of California, which is also the state in which the decree was entered.

[9] In the Commissioners' 1968 version of RURESA, the definition of "duty of support" is substantially identical to ORS 110.022(3) except for the final clause beginning with the words "and the duty to pay support for a 'child attending school' as defined in ORS 107.108(4) where the other jurisdiction imposes the same or substantially similar duty of support." RURESA § 2(b), 9A ULA 656 (1979).

[10] We also note that ORS 107.108 provides that courts "may" enter support orders for a child attending school in these situations:

1. *After* commencement of an annulment or dissolution or separation suit and *before* the decree therein, ORS 107.108(1)(a);

2. *In* a decree of annulment, dissolution or separation, ORS 107.108(1)(b);

3. *During* the pendency of an appeal of a decree, ORS 107.108(1)(c).

Arguably, ORS 107.108 does not apply in this case, at all, in view of ORS 107.108(1)(a),(b) and (c). *But see Eusterman and Eusterman,* 41 Or App 717, 598 P2d 1274 (1979).