In the Matter of the Marriage of

HAZEN, fka Henderson,
*Respondent,*

and

HENDERSON,
*Appellant.*

(83-8-333; CA A32753)

702 P2d 1143

Steven Allen Smith, Portland, filed the brief for appellant.

S. Jane Patterson, Gresham, waived appearance for respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Father appeals a trial court order modifying the parties' dissolution decree to increase his child support obligation. The sole issue is whether the trial court had *in personam* jurisdiction over him. We affirm.

The parties were divorced in Washington in 1973. Mother was awarded custody of their child; father was ordered to pay child support. Father is entitled to claim the child as a dependent for income tax purposes so long as his child support payments are current. They are current at this time.

Father is a resident of Ohio. Mother and the child have been residents of Oregon for several years. After mother registered the parties' decree in Oregon, *see* Uniform Enforcement of Foreign Judgments Act, ORS 24.105 *et seq*,[1] she obtained an order requiring father to show cause in Oregon why his child support payments should not be increased. He was personally served in Ohio. He appeared specially and objected to jurisdiction in Oregon. The trial court held that it had *in personam* jurisdiction over him.

In *Calder v. Jones,* 465 US 783, 104 S Ct 1482, 79 L Ed 2d 804 (1984), the Supreme Court stated:

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has 'certain minimum contacts * * * such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 US 457, 463 [61 S Ct 339, 85 L Ed 278 (1941)]. *International Shoe Co. v. Washington,* 326 US 310, 316 [66 S Ct 154, 90 L Ed 95 (1945)]. In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner,* 433 US 186, 204 [97 S

---

[1] ORS 24.115 provides:

"A copy of any foreign judgment authenticated in accordance with the Act of Congress or the statutes of this state may be filed in the office of the clerk of any court of any county of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the court of any county of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a court of any county of this state and may be enforced or satisfied in like manner."

Ct 2569, 53 L Ed 2d 683 (1977)]. *See also Rush v. Savchuk,* 444 US 320, 332 [100 S Ct 571, 62 L Ed 2d 516 (1980)]."

In *O'Connor v. Lerner,* 70 Or App 658, 662, 690 P2d 1095 (1984), we stated:

"ORCP 4L provides that a court may exercise jurisdiction over a party in any manner not inconsistent with the Constitutions of Oregon[2] and the United States. The comment to this rule indicates that the legislature intended to permit an exercise of jurisdiction which goes to the limit of the Due Process Clause of the Fourteenth Amendment. *See also State ex rel Hydraulic Servocontrols v. Dale,* 294 Or 381, 657 P2d 211 (1982). A state's exercise of personal jurisdiction over a non-resident defendant does not violate due process if there are sufficient contacts with the state so that its exercise of jurisdiction over him is fair. *International Shoe Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945).

" '* * * The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. * * *' *Hanson v. Denckla,* 357 US 235, 253, 78 S Ct 1228, 2 L Ed 2d 1283 (1958)."

Mother has the burden of alleging and proving facts establishing jurisdiction in Oregon. *See State ex rel Jones v. Crookham,* 296 Or 735, 681 P2d 103 (1984).[3]

Father contends that the trial court erred in holding that it had *in personam* jurisdiction over him. He argues that the evidence does not show that he has had the minimum contacts necessary to give Oregon jurisdiction. He relies primarily on *Kulko v. California Superior Court,* 436 US 84, 98 S Ct 1690, 56 L Ed 2d 132 (1978).

In *Kulko,* the husband and wife were residents of New York. They were married in 1959 while the husband, who was

---

[2]The Oregon Constitution does not have a due process clause. *State ex rel v. Jones v. Crookham,* 296 Or 735, 740, 681 P2d 103 (1984).

[3] In the trial court, mother relied on *Tavares and Tavares,* 293 Or 484, 651 P2d 133 (1982). That case is inapposite. In *Tavares,* the father, a resident of California, did not question the jurisdiction of the Oregon court to alter his support obligation for children under 18. He only challenged its jurisdiction to order support for an Oregon child over 18 attending school, when such a provision for support could not be imposed under California law. 293 Or at 491.

in the military, was on a three day stopover in California on his way to Korea. After the wedding, the wife went back to New York, where the husband joined her after his tour of duty. In 1972, they separated, and the wife moved to California. A written separation agreement was drawn up in New York, and the wife went to New York to sign it. She then went to Haiti, where she obtained a divorce which incorporated the agreement. The agreement provided that the children would live in New York with their father during the school year and with their mother during school holidays and summer vacations. The husband agreed to pay the wife $3,000 yearly for support of the children during the part of the year when they were with her. The children later asked to live with their mother during the school year, and the husband consented. The wife thereafter filed an action in California seeking to increase child support. The husband made a special appearance to contest the California court's jurisdiction over him. The California Supreme Court ruled that, by allowing his children to go to California, the husband had "purposely availed himself of the benefits and protections of the laws of California." The United State Supreme Court disagreed. It ruled that the husband had insufficient contacts with California to enable the California court to exercise personal jurisdiction over him.

This case is factually distinguishable from *Kulko*. There, the husband wanted the issues litigated in New York, the state of the marital domicile and the place where the separation agreement had been executed. There was no evidence that the husband had visited the children in California.

■ Here, father has left Washington, the state of the marital domicile. He now resides in Ohio, a state with which mother and the child have had no contacts. Further, his contacts with Oregon are stronger. He has regularly paid mother in Oregon for the support and maintenance of the parties' child. He has communicated with mother in Oregon about his visitations with the child, and he has visited the child in Oregon.[4] By visiting his child in Oregon, father has

---

[4] At the hearing, mother testified in relevant part:

"Q. And have you — has the respondent visited, come to visit your daughter?

"A. Over the years he has seen her approximately every eighteen to twenty-four months.

established a contact with this state relating to the custody of his child so that it is not unfair to require him to litigate the issue of that child's support in this forum. Ohio, which is not the state of the parties' dissolution decree, has less interest in the issue than does Oregon.

In his memorandum of law filed in the trial court, father's attorney argued that mother has three methods of modifying the amount of support:

> "She can go to Washington, the state in which the decree was entered. It has continuing jurisdiction of the parties, and [mother] need only give notice of the hearing to [father].
>
> "She can go to Ohio and personally serve [father] there.
>
> "She can employ the Uniform Reciprocal Enforcement of Support Act * * *."[5]

Father's suggestion that mother litigate this matter in Washington state is patently unreasonable. Assuming that that state's courts have continuing jurisdiction over the parties for these purposes, the fact is that the parties and their child have had no contact with Washington state for almost a decade. Washington is a *forum non conveniens;* its courts may decline to exercise their jurisdiction, because there is no legitimate reason for the case to be brought there. Further, presentation of the case in Washington's courts could prove unduly expensive for *both* the parties and their witnesses, because of its distance from them. With regard to mother going to Ohio to proceed directly against father there, that would merely shift the burden from him to her and the child. We cannot perceive that a rule founded on reasonableness and fairness would dictate that a custodial parent and child bear the burden of this litigation and its attendant inconvenience

---

> "Q. And do you yourself have contact with him outside of these visits?
>
> "A. Generally he gives me a call, you know, some weeks in advance to discuss *that he is coming* and then we have a conversation on the telephone." (Emphasis supplied.)

Father argues in his brief that no evidence links these visits to Oregon. We conclude, on *de novo* review, that it is reasonable to believe that the visits were in Oregon, the child's residence, and we so find.

[5] In her trial court brief, mother's attorney observed, quite realistically we think, that it would be highly unlikely that the prosecutors' offices in Oregon and Ohio would represent mother under URESA in view of the fact that there is no support arrearage.

rather than the non-custodial parent. Finally, mother's remedies under URESA are in addition to and not substitutions for any other remedies. ORS 110.031. Therefore, although wife could have proceeded under URESA, she cannot be required to do so.

██ ██    In *State ex rel Jones v. Crookham, supra,* 296 Or at 740, the Supreme Court stated:

> "The reasonableness of a state exercising jurisdiction over non-residents is a case-by-case question. It is a determination 'in which few answers will be written in black and white. The greys are dominant and even among them, the shades are innummerable. *Estin v. Estin,* 334 US 541, 545, 92 L Ed 1561, 68 S Ct 1213, 1 ALR2d 1412 (1948).' *Kulko v. California Superior Court,* 436 US 84, 92, 98 S Ct 1690, 56 L Ed 2d 132 (1978)."

This is a close case.[6] Oregon has a substantial interest in facilitating child-support actions on behalf of its resident children. Further, the interests of mother and the child in proceeding with this cause in Oregon must be considered. *See McGee v. International Life Ins. Co.,* 355 US 220, 223, 78 S Ct 199, 2 L Ed 2d 223 (1957).

██    We conclude that the quality and nature of father's activity in Oregon are such that it is reasonable to require him to conduct his defense here. *International Shoe Co. v. Washington, supra,* 326 US at 316, 317. "[T]he relationship among [father], the forum, and the litigation," *Shaffer v. Heitner, supra,* 433 US at 204, is such that Oregon is a "fair" forum in this case. The maintenance of this matter in Oregon does not offend traditional notions of fair play and substantial justice.

Affirmed. No costs to either party.

---

[6] For a recent case involving a different aspect of this fascinating problem, *see In re Marriage of Highsmith,* 130 Ill App 3d 725, 474 NE2d 915 (1985).