Kerri Ann (Green) McCAFFERY,
Appellant,

v.

David Eric GREEN, Appellee.

No. S–6705.

Supreme Court of Alaska.

Feb. 7, 1997.

Zane D. Wilson, A. René Broker, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellant.

David E. Green, Wilsonville, OR, pro se.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

MATTHEWS, Justice.

## I. *INTRODUCTION*

This case presents an issue expressly left undecided in *Puhlman v. Turner,* 874 P.2d 291 (Alaska 1994): whether an Alaska court which is already exercising jurisdiction over a nonresident defendant on custody and visitation issues under the Uniform Child Custody Jurisdiction Act may also exercise personal jurisdiction over that defendant on child support issues.

## II. *FACTS AND PROCEEDINGS*

A Texas court issued a final decree divorcing Kerri McCaffery and David Green on June 29, 1987. Under the decree, Kerri was given legal and physical custody of their three children and David was given visitation rights. David was ordered to pay $350 per month in child support. A 1991 modification order, entered under the Texas court's continuing jurisdiction, raised David's child support obligation to $375 and provided a detailed visitation schedule. Under the order, David was to buy one-way tickets for the children when exercising his visitation rights; Kerri was required to buy one-way tickets so that the children could return to her.

Kerri moved to Alaska in 1991 with the children. David moved to Oregon in January 1994. Neither of the parties now lives in Texas.

On May 19, 1994, Kerri filed a complaint in the Alaska superior court for modification of the child support and the transportation cost provisions of the modified Texas decree. David filed an answer objecting to the exercise of personal jurisdiction by the Alaska court over the support issue.

The superior court denied Kerri's motion, noting that Kerri had failed to register the Texas judgment under what was then AS

09.30.180 and AS 25.25.254. It also noted that, had Kerri registered the Texas judgment in Alaska, Alaska would have had jurisdiction over custody and visitation issues under the Uniform Child Custody Jurisdiction Act (UCCJA), AS 25.30.010 *et seq.,* but would have no jurisdiction over David with respect to child support since David lacked any contacts with the state. The superior court allowed Kerri twenty days to comply with the registration requirements and to renew her motion to modify the transportation cost arrangement. Kerri filed a motion for reconsideration on the child support jurisdictional issue; the motion was denied. Kerri then registered the Texas judgment and renewed her motion to modify the transportation cost arrangement. David opposed, and the court denied the motion to modify. Kerri appeals both the child support jurisdiction issue and the transportation cost issue.

## III. *DISCUSSION*

### A. *Child Support Issue*

#### 1. *Kerri's failure to register the Texas order*

In its written opinion, the superior court's first reason for dismissing Kerri's motion to modify the Texas support order was her failure to register the Texas judgment in Alaska, as provided for in AS 09.30.180 [1] and former AS 25.25.254.[2]

The superior court allowed Kerri twenty days to register the Texas judgment and to pursue her transportation cost motion, recognizing that it would have jurisdiction to determine that issue. The failure to register the Texas order presents the same problem to the motion to modify the transportation cost arrangement as it does to the support issue, however. The only reason the court could have had to dismiss the second claim while allowing the first to proceed was its belief that it lacked personal jurisdiction over David to hear the second. We thus turn to the jurisdictional issue, noting that if personal jurisdiction existed, the claim should have been allowed to proceed.

#### 2. *Personal jurisdiction* [3]

We have consistently interpreted Alaska's long-arm statute, AS 09.05.015, to be as encompassing as permitted by the due process clause of the Fourteenth Amendment to the federal constitution. *See Glover v. Western Air Lines, Inc.,* 745 P.2d 1365, 1367 (Alaska 1987). The list of circumstances provided in AS 09.05.015 under which an Alaska court may exercise personal jurisdiction is not exclusive. *Alaska Telecom, Inc. v. Schafer,* 888 P.2d 1296, 1299 (Alaska 1995). Alaska courts may exercise jurisdiction whenever the federal minimum contacts requirements are satisfied. *Id.; Glover,* 745 P.2d at 1367; *Volkswagenwerk, A.G. v. Klippan, GmbH,* 611 P.2d 498, 500 (Alaska), *cert. denied,* 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980).

The superior court noted that it had jurisdiction under the UCCJA to hear the custody

---

**1.** Alaska Statute 09.30.180 provides only the short title for the Uniform Foreign Money–Judgments Recognition Act, AS 09.30.100—.180. It seems likely that the superior court meant to refer to AS 09.30.200, which is part of the Uniform Enforcement of Foreign Judgments Act, and which provides that a copy of a foreign judgment may be filed with the court and that a judgment so filed has the same effect as a domestic judgment.

**2.** Former AS 25.25.254 provided a mechanism whereby an obligee could register a foreign support order with the superior court such that the support order would be treated in the same manner as a support order issued by the superior court. *See* Ch. 126, § 15, SLA 1977. That statute was in effect at the time Kerri filed the motion at issue; it was repealed in 1995 when

the legislature replaced the Uniform Reciprocal Enforcement of Support Act (URESA), AS 25.25.010–.100, .110–.200, and .210–.270, with the Uniform Interstate Family Support Act (UIFSA), AS 25.25.101–.103, .201–.209, and .301–.903. *See* 1995 Senate Journal 517 (governor's transmittal letter).

**3.** Jurisdictional issues are questions of law subject to this court's independent judgment. *See Andrews v. Alaska Operating Engineers–Employers Training Trust Fund,* 871 P.2d 1142, 1144 (Alaska), *cert. denied,* —— U.S. ——, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994). This court's duty is "to adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Langdon v. Champion,* 752 P.2d 999, 1001 (Alaska 1988) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

and visitation issues.[4] It found that it lacked jurisdiction over child support, however, citing *Puhlman v. Turner,* 874 P.2d 291 (Alaska 1994), and *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

### (a) *Puhlman v. Turner*

We held in *Puhlman v. Turner,* 874 P.2d 291 (Alaska 1994), that a nonresident father who flew to Anchorage to file a Texas visitation order and enforce his visitation rights did not thereby subject himself to personal jurisdiction in Alaska for a support modification claim. We noted that the father did not "purposely avail" himself of the protection of the Alaska courts, but rather was forced into court by his wife's refusal to allow visitation. *Id.* at 294. To subject a nonresident parent to personal jurisdiction based on the parent's use of an Alaska court to enforce a foreign judgment would undermine the strong public policy of promoting visitation and would discourage parents from enforcing visitation orders. *Id.* at 294–95.

The superior court in *Puhlman,* however, had also ruled that Alaska had no jurisdiction under the UCCJA to modify the visitation provisions at the wife's request. *Id.* at 293 n. 2. We noted that this was a mistake, since the Texas version of the UCCJA surrendered jurisdiction to a child's new home state. *Id.* But since the parties did not address the issue, we specifically reserved judgment on whether the exercise of UCCJA jurisdiction over child custody or visitation issues could provide an independent basis for personal jurisdiction under the Fourteenth Amendment. *Id.; see also id.* at 297 (Matthews, J., dissenting) (suggesting that a state's vital interest in protecting resident children and the interrelatedness of visitation and support issues might give a state already exercising jurisdiction under the UCCJA jurisdiction over support issues as well).

The superior court was therefore incorrect in its reliance upon *Puhlman* as a basis for dismissing Kerri McCaffery's claim. We address the issue left undecided by *Puhlman:* whether the contacts that give a state jurisdiction under the UCCJA will also allow it to address a request to modify a child support order.

### (b) *Kulko v. Superior Court*

The United States Supreme Court addressed the exercise of personal jurisdiction in a child support proceeding in *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), and held that California lacked personal jurisdiction over a New York resident who had sent his children to live with their mother in California.

In *Kulko,* the husband and wife resided in New York for approximately thirteen years; their two children were born there. 436 U.S. at 86–87, 98 S.Ct. at 1693–94. When the couple separated, the wife moved to California and the husband remained in New York. *Id.* at 87, 98 S.Ct. at 1694. The children were originally to spend the school year with the father and Christmas, Easter, and summers with the mother; the father was to pay some support to the mother for the time the children spent with her. *Id.* In December 1973 the daughter told her father that she wanted to move to California to be with her mother; the father bought a one-way plane ticket for her. *Id.* In January 1976 the son followed. *Id.* at 88, 98 S.Ct. at 1694–95. Less than a month later, the mother sought to modify the divorce decree to obtain full custody and to increase the father's child support obligations. *Id.*

---

**4.** Under the UCCJA, Alaska has jurisdiction "to make a child custody determination by initial or modification decree if ... (1) this state (A) is the home state of the child at the time of commencement of the proceeding...." AS 25.30.020(a). "Home state" is defined as the state in which the child had lived immediately preceding the time involved for at least six months. AS 25.30.900(5).

"Custody determination" is defined expressly to *include* visitation rights, but expressly to *exclude* "a decision relating to child support or any other monetary obligation of any person." AS 25.30.900(2). It would be incorrect, however, to say that UCCJA jurisdiction may never be exercised over decisions involving monetary obligations, since, as this case illustrates, the exercise of visitation rights often involves significant financial expense on the part of one or both parents.

We need not distinguish between the UCCJA and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, since the two do not conflict here.

The United States Supreme Court held the exercise of personal jurisdiction by California to be an unwarranted extension of the "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court began its minimum contacts analysis by stating:

Like any standard that requires a determination of "reasonableness," *the "minimum contacts" test of International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.* ... We recognize that this determination is one in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.

*Kulko,* 436 U.S. at 92, 98 S.Ct. at 1697 (citations and quotations omitted) (emphasis added). The Court later added:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State....

*Id.* at 93–94, 98 S.Ct. at 1698 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)) (alterations in original).

Under this analysis, the Court found no sufficient purposeful act by the father to avail himself of the benefits and protections of California's laws. *Kulko,* 436 U.S. at 94, 98 S.Ct. at 1698. The Court noted that "basic considerations of fairness" pointed toward New York as the proper forum, since the father "remained in the State of the marital domicile, whereas it is [the mother] who has moved across the continent." *Id.* at 97, 98 S.Ct. at 1699.

The Court recognized that California had "unquestionably important" interests in protecting the welfare of its minor residents, but it noted that those interests were already being served by URESA.[5] *Id.* at 98, 98 S.Ct. at 1700. Finally, it suggested that the outcome might be different if California had asserted a "particularized interest in trying such cases in its courts by, *e.g.,* enacting a special jurisdiction statute." *Id.* It concluded: "[T]he mere act of sending a child to California to live with her mother is not a commercial act and connotes no intent to obtain or expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State's judicial jurisdiction." *Id.* at 101, 98 S.Ct. at 1701.

### (c) Applying *Kulko* to the present case

The *Kulko* decision has not been received with universal satisfaction. In some ways, it places less importance on a personal and moral obligation, than it does on a merely economic obligation.[6] By extending the purposeful availment standard to the parent-child relationship, it gives great emphasis to the "contacts" requirement of *International*

---

5.  URESA, enacted in some form in all fifty states, allowed a custodial parent to file a petition in the court of his or her home state and to receive a hearing in the "responding state" where the obligor parent resided. The obligee parent would typically be represented by the public prosecutor of the responding state. *See generally* 9B U.L.A. 381–608 (West 1987). *See also* Lisabeth Hughes, Note, *Interstate Enforcement of Support Obligations Through Long Arm Statutes and URESA,* 18 J. Fam. L. 537, 540 (1979). Some states, including Alaska and Oregon, have now replaced URESA with the UIFSA. *See* AS 25.25.101 *et seq.;* ORS 110.300 *et seq.*

6.  Professor Clark has written:
    In the ordinary sense of the phrase it seems clear that the defendant in *Kulko* purposely availed himself of the protection and benefits of California law when he sent his daughter there to live. If the defendant here had been an insurance company which sent one of its policies into California, it would have apparently been liable to suit in California [citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)]. The *Kulko* opinion suggests that this standard is only met when the defendant has sought a commercial benefit in the forum state.... A rule of law which gives greater weight to the enforcement of commercial contracts than to the enforcement of duties of support in the family can only be characterized as enacting a topsy-turvy system of values.
    1 Homer H. Clark, Jr., *The Law of Domestic Relations* § 13.4, at 761 (2d ed.1987).

*Shoe. International Shoe* and subsequent cases held that the Due Process Clause "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no *contacts, ties, or relations." International Shoe,* 326 U.S. at 319, 66 S.Ct. at 160 (emphasis added); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565–66, 62 L.Ed.2d 490 (1980). Some commentators have suggested that the ties and relations between a parent and child create ties and relations between the parent and the state in which the child lives sufficient to satisfy notions of fairness in exercising personal jurisdiction in support proceedings.[7] In other words, the parent-child relationship may be seen as the archetype of "affiliating circumstances." *See Hanson,* 357 U.S. at 246, 78 S.Ct. at 1235–36.

Others have suggested that *Kulko* relies too heavily upon URESA as an alternative.

URESA has been criticized as ineffective at preserving the interests of the obligee and child adequately.[8] Moreover, while the *Kulko* Court treated the statute as if it could be used to seek the modification of a support order, 436 U.S. at 99–100, 98 S.Ct. at 1700–01, many states allow URESA to be used only for enforcement of an existing support order. *See* URESA § 1, 9B U.L.A. 568 (West 1987) ("The purposes of this act are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto."); Revised Uniform Reciprocal Enforcement of Support Act (RURESA) § 1, 9B U.L.A. 394 (West 1987) (substantially the same); *Vix v. State of Wis. ex rel. Vix,* 100 Nev. 495, 686 P.2d 226, 227 (1984); *Coons v. Wilder,* 93 Ill.App.3d 127, 48 Ill.Dec. 512, 416 N.E.2d 785, 789 (1981); *Littrell v. Littrell,* 601 S.W.2d 207, 209 (Tex.Civ.App.1980); 1 Clark, § 13.4, at 760 ("The Act as it has been applied may be used only to enforce claims for support.").[9]

**7.** The United States Commission on Interstate Child Support has proposed that personal jurisdiction be founded upon the parent-child bond "child-state jurisdiction." Concerning this proposal one commentator has written:
> Child-state jurisdiction is based on the understanding that the ties between parent and child are unique and exist regardless of the father's intentions or his actions.
> Child-state jurisdiction is also an implementation of the universally accepted notion that the duty to support one's children is an inevitable consequence of one's status as a parent.... [T]he child's presence in a given state does not link nonresident parents to the state for all purposes, but only for those purposes which inevitably flow from their status as a parent.

Monica J. Allen, *Child–State Jurisdiction: A Due Process Invitation to Reconsider Some Basic Family Law Assumptions,* 26 Fam. L.Q. 293, 311 (1992).

**8.** *See* Allen, *supra* at 300 ("Prosecutors may bargain away the interests of an absent obligee or may prosecute her claim less zealously. Gathering evidence concerning the obligor's ability to pay can be especially difficult from afar."); David J. Benson, *Can a Case Be Made for the Use of the Uniform Child Custody Jurisdiction Act in Child Support Determinations?,* 26 Gonz. L.Rev. 125, 128 (1990) (noting perception that URESA is used primarily by state to recoup funds expended on AFDC; noting that local official is often less zealous advocate); 1 Clark, § 7.6, at 488 (2d ed. 1987) (Due to inefficiencies, "it is unrealistic to assume, as *Kulko* does for example,

that an obligee always can fall back on the URESA proceeding when long-arm jurisdiction is unavailable."); *id.* § 13.4, at 760 (URESA is "not an adequate substitute for the kind of suit the plaintiff sought to bring in *Kulko.*").

The United States Supreme Court itself recognized URESA's shortcomings in 1981. *Jones v. Helms,* 452 U.S. 412, 425 & n. 26, 101 S.Ct. 2434, 2443 & n. 26, 69 L.Ed.2d 118 (1981) ("Although appellant's argument [that URESA is inadequate to enforce support obligations] is persuasive, for purposes of deciding this case we need neither accept nor reject it.") (citing commentators critical of URESA).

**9.** The limitation of URESA to enforcement actions is by no means universal. *See, e.g., Bjugan v. Bjugan,* 710 P.2d 213, 216–17 (Wyo.1985) (holding foreign support decree modifiable by responding court); *Ibach v. Ibach,* 123 Ariz. 507, 510, 600 P.2d 1370, 1373 (1979) (holding that responding court may fix support level at amount different from that of original judgment); *cf. Burke v. Burke,* 617 N.E.2d 959, 963 (Ind.App. 1993) (distinguishing modification and supersession from modification without supersession under RURESA). We also note that the UIFSA specifically provides a mechanism through which a responding state may modify another state's support decree under certain circumstances. *See* AS 25.25.611; ORS 110.432.

For our purposes, however, it is sufficient to note that Oregon law on the use of URESA to modify a foreign support decree is unsettled. *See State ex rel. Neb. v. Brooks,* 34 Or.App. 975, 580

We are, of course, bound by *Kulko* and not by its critics. But significant distinctions suggest that Alaska may still exercise personal jurisdiction here without violating the notions of fundamental fairness with which the *Kulko* court was concerned. For example, the obligor in *Kulko* remained in the state of marital domicile (436 U.S. at 97, 98 S.Ct. at 1699–1700); here, both parents have "moved across the continent." This has two effects. First, it removes any doubt that Alaska has exclusive subject matter jurisdiction under the UCCJA as the child's home state.[10] Second, it relieves any federalism concerns in the personal jurisdiction analysis, since Texas now has a significantly diminished interest in seeing its divorce decree recognized as written.[11]

We consider it significant that the Supreme Court in *Kulko* emphasized that the mother could have brought all of her claims in New York. 436 U.S. at 95, 98 S.Ct. at 1698–99. Here, if Alaska cannot hear the support claim then there is no one state where all of Kerri's claims can be litigated. Alaska, as the child's home state, has exclusive jurisdiction over custody (and visitation) issues under the UCCJA and PKPA. Thus neither Texas nor Oregon may modify the custody or visitation provisions. *See Rogers v. Rogers*, 907 P.2d 469, 471–72 (Alaska 1995) (holding that home state's jurisdiction to modify custody decree is exclusive under PKPA). But under David's analysis only Oregon, a state with no relation to the mother, the children, or the marriage, could hear the support issue.[12] Even if Kerri could have used URESA to modify the Texas decree in Oregon, as the *Kulko* Court suggested, she would still have had to maintain two separate actions upon substantially similar

P.2d 206, 207 (holding that Oregon may not modify foreign decree under URESA), *opinion withdrawn, result adhered to on other grounds*, 35 Or.App. 805, 583 P.2d 12 (1978) (leaving question open); *State ex rel. La. v. Phillips*, 39 Or. App. 325, 591 P.2d 1196 (holding modification possible), *aff'd on reh'g*, 40 Or.App. 547, 595 P.2d 1276 (1979); *In the Matter of Marriage of Tavares*, 293 Or. 484, 651 P.2d 133, 137 n. 5 (1982) (citing above cases, noting that Oregon Supreme Court has never decided whether foreign decree may be modified).

It is also not clear that Oregon would represent Kerri at all in a URESA action. *See In the Matter of Marriage of Hazen and Henderson*, 74 Or.App. 322, 702 P.2d 1143, 1147 n. 5 (1985) ("[R]ealistically ... it would be highly unlikely that the prosecutors' offices in Oregon ... would represent mother under URESA in view of the fact that there is no support arrearage."), *overruled on other grounds by In the Matter of Marriage of Horn*, 97 Or.App. 177, 775 P.2d 338, 339 (1989). We further note that the UIFSA did not take effect in Oregon until after Kerri had filed her complaint. *See* ORS 110.300 *et seq.;* 9 U.L.A. 255 (West Supp.1996) (noting Oregon enacted UIFSA effective July 1, 1994).

10. *See* 1 Clark, § 13.5, at 809 (2d ed. 1987) ("One type of case does seem clear under the UCCJA. When all parties, parents and child, have left the state in which the initial decree was entered, and have been away for an appreciable period, jurisdiction to modify the decree no longer continues in the court of that state.").

11. Federalism has traditionally been a part of the due process equation in personal jurisdiction issues. *See World–Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565–66 ("Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment."). Some commentators have questioned why this is so, since the Due Process Clause says nothing about federalism and since this is the only due process context in which federalism concerns have been voiced. *See, e.g.,* Martin H. Redish, *Due Process, Federalism, and Personal Jurisdiction: A Theoretical Evaluation*, 75 Nw. U.L.Rev. 1112 (1981); Russell J. Weintraub, *Due Process Limitations on the Personal Jurisdiction of State Courts: Time for Change*, 63 Or. L.Rev. 485, 503 (1984).

Indeed, Justice White later retreated somewhat from his own *World–Wide Volkswagen* language, quoted above, in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104–05 n. 10, 72 L.Ed.2d 492 (1982) (The restriction on jurisdiction "must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause. That Clause is the only source of the personal jurisdiction requirement and the Clause itself makes no mention of federalism concerns.").

12. It is possible that Texas could also exercise personal jurisdiction over David in a motion to modify the support decree since it was the state of marital domicile. However, Texas still may not hear the custody issue, and it would seem to serve as an especially inconvenient forum to both parties.

evidence since the Oregon court could not address any custody or visitation issues.

We also consider it significant that *Kulko* was decided before the widespread enactment of the UCCJA.[13] The defendant in *Kulko* had no contacts with California; the Court's analysis focused on the fairness of haling him into court in California and whether he could reasonably expect to be subjected to personal jurisdiction in California. 436 U.S. at 97–98, 98 S.Ct. at 1699–1700. Here, David is already before an Alaska court with respect to issues of visitation and transportation expenses. He does not dispute that Alaska has jurisdiction over him with respect to these issues.[14] The question now becomes, once David is haled into court in Alaska on a custody claim, would making him answer the support modification claim violate "traditional notions of fair play and substantial justice"?[15] *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. It may be in David's interest to have an Oregon court hear the support issue, but that is not the issue. If making him defend the support claim in Alaska would not impermissibly burden his right to due process, then Alaska may assert jurisdiction.

*Kulko* involved a complex balance of interests: the father's, the mother's, the children's, and the potential fora's. It would be easy to reduce it to a simple rule—there is no personal jurisdiction over nonresidents in child support proceedings—and affirm. But we believe that such a holding would ignore important differences between that case and this one. No party has remained in the issuing state. URESA has not proven as effective as the *Kulko* Court had hoped; it remains to be seen what difference the UIFSA will bring.[16] The father is already before the Alaska court under the UCCJA to determine visitation issues. There is no concern that the exercise of jurisdiction would "discourage parents from entering into reasonable visitation agreements." *Kulko*, 436 U.S. at 93, 98 S.Ct. at 1697. Any discouragement would result from the UCCJA scheme, which extends jurisdiction to visitation agreements already, and not of the exercise of jurisdiction here.

Furthermore, assertion of jurisdiction by Alaska here simply makes sense. An Alaska court is already deciding issues of custody and visitation. A visitation determination inherently affects the amount of child support owed by the obligor parent. Alaska Civil Rule 90.3(a)(3) specifically links the two issues: a court may allow an obligor parent to reduce child support payments up to fifty percent for any period in which that parent has extended visitation of over twenty-seven consecutive days. This rule recognizes that a parent's own expenses are greater (and the other parent's expenses less) when that parent exercises visitation rights. To decide custody and visitation issues without being able to make the logically concomitant support modification could result in an imba-

13. The UCCJA was enacted in Alaska in 1977. Ch. 61, SLA 1977. It had been adopted in all fifty states by 1983. *See* 1 Clark, § 13.5, at 783.

14. The United States Supreme Court has never addressed whether the exercise of personal jurisdiction under the UCCJA satisfies Fourteenth Amendment due process concerns, but the UCCJA and PKPA have been widely accepted and utilized. *See Puhlman*, 874 P.2d at 297 (Matthews, J., dissenting); Benson, *supra* note 8, at 134 (courts which have considered the Act have sustained it). In any event, David has submitted to personal jurisdiction here on the visitation issue under the UCCJA.

15. We held in *Puhlman* that being forced into court to enforce a visitation judgment does not create contacts for jurisdiction over other issues, 874 P.2d at 295, so being forced into court to *defend* a visitation-related claim could do no better. But the existence of UCCJA jurisdiction in Alaska does affect the fairness analysis under the Fourteenth Amendment of haling David into court on a different but related issue. And the primary concern of *Puhlman*—that exercising jurisdiction over a nonresident who comes to Alaska to file a foreign visitation order would discourage the enforcement of visitation rights—does not exist here.

16. Among other changes, the UIFSA does include a specific long-arm statute intended "to facilitate one-state proceedings whenever possible" in the child's home state. *See* UIFSA Prefatory Note, 9 U.L.A. 257 (West Supp.1996). It is not clear, however, that the statute would allow personal jurisdiction over David under these facts except under its catch-all provision even if it had been in force when Kerri filed her complaint. *See* AS 25.25.201(8).

lance between visitation allowed and support owed.

Other commentators have noted that support and custody issues are intertwined:

> Dissolution of marriage determines status and does not carry with it any inevitable consequences. The parties are not presumed to have any ongoing obligation to one another. Therefore, in a divorce action it is conceptually justifiable to sever the economic issues from the status issues and require personal jurisdiction to resolve the former. In contrast, divorce does not extinguish a parent's obligation to his or her children. While the amount of monthly payments is certainly a subject of frequent dispute, the fact remains that the noncustodial parent can reasonably anticipate being liable for some amount of child support. The parent's obligation to support the child is not merely related to the status determination; it is an inevitable concomitant of custody decisions.

Monica J. Allen, *Child–State Jurisdiction: A Due Process Invitation to Reconsider Some Basic Family Law Assumptions,* 26 Fam. L.Q. 293, 307 (1992). The close relationships between visitation and support and between custody and support, and the inverse effect each can have on the other, suggest that a court with exclusive jurisdiction to modify visitation rights under the UCCJA should have the power concurrently to adjust support obligations.[17, 18]

### B. *Transportation Cost Issue*

Kerri's original motion to modify the transportation cost arrangement asked that the court order the parties to alternate buying round-trip airplane tickets for visitation so that the parties could avoid wasting money on separate one-way tickets. David responded by objecting that the burden of paying for an entire round-trip ticket every other visit may be harder to bear than paying for a one-way ticket for each visit. He wrote: "Mr. Green is requesting that ... they continue to divide the expense of travel equally per visit or at the very least be able to fly their children one way as is currently in force." Kerri filed a reply that indicated she did not oppose David's suggestion that they divide expenses and asked that the parties thus split the cost of a round-trip ticket for every visitation trip. In this way, the parties could both save money without putting an additional burden on David's finances by requiring him to make a significant outlay every other trip.

Because the parties seem to have agreed on a reasonable procedure to save money by avoiding the purchase of two separate one-way tickets for each visitation, the superior court's denial of the motion to modify, issued without explanation, is perplexing. The court may not have appreciated that the parties at the time were purchasing separate one-way tickets and were agreeing to split the round-trip cost instead.

---

**17.** An Indiana court has held that the UCCJA may apply to contempt proceedings where they are "inextricably interwoven" with issues of custody or visitation. *Funk v. Macaulay,* 457 N.E.2d 223 (Ind.App.1983). There, a father was found in contempt for his disruptive exhortations to the children over the telephone; the court recognized that telephonic communication is an "important facet" of visitation rights. *Id.* at 225. That case was decided under the UCCJA alone, however, without resort to an independent Fourteenth Amendment analysis, since the UCCJA provides jurisdiction over visitation rights but denies jurisdiction over monetary obligations. The remedy sought in that contempt proceeding was non-monetary. *Id.*

Kerri cites *Plucker v. Plucker,* 338 N.W.2d 842 (S.D.1983), for the proposition that a child's domicile in a state alone can give that state personal jurisdiction over a nonresident parent for child support issues. But *Plucker* is not quite on point, since the forum state there was the marital domicile and the father abandoned the mother and children in that state. *Id.*

**18.** Kerri labels this argument "jurisdiction by necessity." This is not the "jurisdiction by necessity" often discussed by commentators and implicitly recognized by the U.S. Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 419 n. 13, 104 S.Ct. 1868, 1874 n. 13, 80 L.Ed.2d 404 (1984). That theory addresses multiple defendants who cannot be brought before any single forum to decide a central issue. Here, there is only one defendant, but multiple issues, and different considerations are involved. The analogy has some merit, though, since a decision on the custody and visitation issues may be logically inconsistent with a support decision from another court.

We remand the transportation cost modification issue so that the superior court can reconsider in light of David's suggestion and Kerri's agreement.

## IV. CONCLUSION

Alaska is currently exercising personal jurisdiction over David Green under the UCCJA and PKPA for child custody and visitation-related issues. Texas, the issuing state, no longer has jurisdiction over any issues since all parties have moved away. Given the interrelatedness of custody and visitation with child support issues, given that all parties have left the marital domicile, and given that David is already before the Alaska courts, it would not violate "traditional notions of fair play and substantial justice" to exercise personal jurisdiction over David on child support issues.

The superior court also denied a motion to modify where the parties seem to have agreed upon a mutually acceptable cost-saving arrangement.

The case is REVERSED and REMANDED on both the child support and the transportation cost issues.

RABINOWITZ, J., dissents in part.

RABINOWITZ, Justice, dissenting in part.

Article VI of the Constitution of the United States provides in Clause 2:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.

1. In re F.P., 843 P.2d 1214, 1215 n. 1 (Alaska 1992), declares:

> As the court of appeals observed in Harrison v. State, 791 P.2d 359 (Alaska App.1990):
> > Where a federal question is involved, the courts of Alaska are not bound by the decisions of a federal court other than the United States Supreme Court.
> Id. at 363 n. 7 (citations omitted).

With regard to the Supremacy Clause of the Federal Constitution, we said in Totemoff v. State, 905 P.2d 954, 963 (Alaska 1995):

> We are not obliged to follow Katie John, since this court is not bound by decisions of federal courts other than the United States Supreme Court on questions of federal law. In re F.P., 843 P.2d 1214, 1215 n. 1 (Alaska 1992), cert. denied, 508 U.S. 950, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993).[1]

The basic principle operative here is that all American courts, state and federal, owe obedience to the decisions of the Supreme Court of the United States on questions of federal law, and a judgment of the Supreme Court provides the rule to be followed in all such courts until the Supreme Court sees fit to reexamine it.[2]

1B James W. Moore, Moore's Federal Practice § 0.402[1], at I–10 (2d ed.1996).

Given the mandate of the Supremacy Clause and this court's acknowledgment that it is obligated to follow the decisions of the United States Supreme Court on questions of federal law, I dissent from the majority's departure from the holding of Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

In Kulko, the United States Supreme Court held that California lacked personal jurisdiction over Ezra Kulko, who had sent one of his daughters to live with her mother in California. The Court ruled:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.... [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum state....

See also Freeman v. Lane, 962 F.2d 1252, 1258 (7th Cir.1992); Kraus v. Board of Ed. of Jennings, 492 S.W.2d 783, 784–85 (Mo.1973).

2. Cf. Booster Lodge No. 405, Int. Ass'n of M. & A.W. v. N.L.R.B., 459 F.2d 1143, 1150 (D.C.Cir. 1972), aff'd, 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973) (holding the court of appeals may not properly overrule a decision of the Supreme Court in order to force its reconsideration).

436 U.S. at 93–94, 98 S.Ct. at 1698 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)) (alterations in original). In my view, this is the core holding of *Kulko*. In the instant case, David Green has done even less in the way of "purposefully availing himself of the privilege of conducting activities within the forum state" than Ezra Kulko did. Ezra Kulko actually placed one of his children on a plane to California. Here David Green did nothing directed toward Alaska.

I readily concede that there are numerous grey areas implicated in the methodology of personal jurisdiction analysis once the "essential" element of "the defendant purposefully availing himself" of the privilege of conducting activities within the forum state is satisfied. Nevertheless, the purposeful availment element is the *sine qua non* of personal jurisdiction. Since *Kulko* is squarely on point, I am not persuaded that we are free to disregard its teachings. Thus I would affirm the superior court's denial of Kerri's motion for modification of child support on the basis that under *Kulko* the superior court lacked personal jurisdiction over David Green.[3]

**3.** I agree with the majority's disposition of the transportation cost modification issue.