Terrence L. PUHLMAN, Appellant,

v.

Carol A. TURNER, formerly known as Carol A. Puhlman, Appellee.

No. S–5422.

Supreme Court of Alaska.

May 27, 1994.

John C. Pharr, Law Offices of John C. Pharr, Anchorage, for appellant.

George E. Weiss, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

### OPINION

COMPTON, Justice.

The superior court held that if a nonresident parent seeks to enforce in Alaska the visitation provisions of an out-of-state divorce decree, the Alaska court may exercise personal jurisdiction over the nonresident in a proceeding to modify the support provisions of the decree. We vacate the superior court's order and direct entry of an order dismissing the support modification proceeding.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Terrence L. Puhlman, a member of the United States Armed Forces, and Carol A. Turner married and had two children. On September 15, 1988, they obtained a divorce in Texas. A modification decree entered by the Texas court on July 27, 1990 (Texas Order) [1] provides in part that (1) Turner has primary physical custody of the children; (2) Puhlman has visitation rights including custody of the children for approximately three months each summer; (3) Turner is to "deliver," i.e., be financially responsible for transporting, the children to Puhlman's residence at the beginning of the summer; (4) Puhlman is to similarly "deliver" the children to Turner's residence at the end of the summer; and (5) Puhlman is to pay child support in the amount of $296.00 per month during the months in which Turner has custody of the children. Turner and the children moved to Anchorage between entry of the original and modification decrees.

In 1992 Puhlman was stationed in Germany. Turner refused to pay for the children to fly to Germany that summer to visit Puhlman. Puhlman flew to Anchorage in June and filed the Texas Order with the superior court, AS 09.30.200, and sought a Writ of Assistance to enforce it. He filed a motion for expedited consideration, because he had to return to duty in Germany. Turner filed a cross-motion which, *inter alia*, sought an increase in child support.

The superior court enforced the Texas Order, directing that the children be allowed to go to Germany for the remainder of the summer, and that Turner bear the expense of their return to Anchorage at the end of the summer. The court deferred consideration of Turner's cross-motion to increase child support to the regular motions calendar, but opined that it had personal jurisdiction over Puhlman. Puhlman opposed the cross-motion, challenging the Alaska court's exercise of personal jurisdiction over him. The superior court ruled that Alaska did have personal jurisdiction over

1. The registered Texas decree which included visitation provisions was entered in November 1988. This case concerns an order amending that decree to include extensive and specific visitation provisions.

Puhlman, and began proceedings to modify the child support provisions of the Texas Order.[2] Puhlman appeals.[3]

## II. DISCUSSION

█ It is well-settled that Alaska courts follow federal "minimum contacts" analysis when applying Alaska's long-arm jurisdiction statute,[4] consistent with the due process requirements of the Fourteenth Amendment to the United States Constitution. *See, e.g., Glover v. Western Air Lines, Inc.,* 745 P.2d 1365, 1367 (Alaska 1987); *Volkswagenwerk, A.G. v. Klippan, GmbH,* 611 P.2d 498, 500 (Alaska), *cert. denied,* 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980).

The United States Supreme Court analyzed minimum contacts with regard to child support obligations in *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The Kulkos separated in 1972 and were later divorced. Pursuant to a separation agreement negotiated in New York, Kulko, a resident of New York, was awarded custody of the two children. He was ordered to pay child support during the children's visitation with Horn, their mother, who had moved to California. *Id.* at 87–88, 98 S.Ct. at 1693–1694. The children moved to California in 1973 and 1976 respectively. Horn initiated suit in California to obtain custody of the children and increase child support payments. *Id.* at 88, 98 S.Ct. at 1694. Kulko defended on the grounds that the California court lacked personal jurisdiction over him. *Id.* The United States Supreme Court agreed:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State...."

*Id.* at 93–94, 98 S.Ct. at 1698 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)) (alteration in original). The Court decided that neither (1) Kulko's temporary presence in California, (2) his consent to allow his children to live in

2. The superior court noted that it did not have jurisdiction to modify the visitation provisions of the Texas Order:

> The Texas Order is not challenged as being invalid. It is suggested that there may be a need to modify it, although Alaska does not have jurisdiction to modify it, which the parties are fully aware of and Ms. Turner's been aware of that fact for some time because of the prior litigation here. If it's to be modified, it'll be modified in Texas.

The court did not state the legal basis for this conclusion.

At the time the superior court entered this order, Alaska had become the "home state" of the children. AS 25.30.020(a)(1). It does not appear from the record that a proceeding concerning the children was pending in a court in Texas or any other state. AS 25.30.050(a). Texas, like Alaska, surrenders modification jurisdiction to the new home state of the custodial parent and children even though the non-custodial parent remains a resident. *Reppond v. Blake,* 822 S.W.2d 759 (Tex.App.1992); Tex.Fam.Code § 1153(d) (Vernon 1986); *see Baumgartner v. Baumgartner,* 788 P.2d 38 (Alaska 1990); *Bock v. Bock,* 824 P.2d 723, 724 (Alaska 1992). Thus it appears that Alaska would have jurisdiction to modify the Texas Order regarding custody or visitation, were either of those issues before it. *See* 28 U.S.C. 1738A(f)(1), (2) (1988).

We note that the Uniform Child Custody Jurisdiction Act (UCCJA) has been adopted by every state in the Union and is codified at AS 25.30.-010–.910. The Alaska UCCJA provides in part:

> The superior court has jurisdiction to make a child custody determination by initial *or modification decree....*

AS 25.30.020(a) (emphasis added). Nonetheless, "custody determination" ... does not include a decision relating to child support or any other monetary obligation of any person. AS 25.30.900(2); *See* UCCJA § 2(2), 9 U.L.A. 133 (1988). The parties did not raise and we do not address the question whether the contacts and interests which give Alaska modification jurisdiction over custody and visitation under the UCCJA provide a sufficient independent basis for personal jurisdiction under the Fourteenth Amendment to the United States Constitution.

3. The order from which Puhlman "appeals" is not a final order; hence it is not appealable. *See* AS 22.05.010(a); Alaska Appellate Rule 202(a). However, because the issue questions the power of the superior court to determine the underlying cause, and the case has been briefed and argued, we elect to treat the "appeal" as a petition for review, Appellate Rule 402(a)(1), and grant the petition.

4. Alaska's long-arm jurisdiction is codified in AS 09.05.015. The superior court did not clarify which subsection of this statute it relied upon in determining that it had personal jurisdiction over Puhlman.

California, nor (3) his financial benefit in not having to pay certain living expenses for his children constituted "minimum contacts" with California. *Id.* 436 U.S. at 93–97, 98 S.Ct. at 1697–99. In conclusion, the court held that subjecting Kulko to personal jurisdiction in California would "offend 'traditional notions of fair play and substantial justice.'" *Id.* at 92, 97–98, 98 S.Ct. at 1696–97, 1699–1700 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

Puhlman argues that *Kulko* is applicable to this case. We agree. The *Kulko* court distinguished the concepts of being forced into court and "purposefully availing" oneself of a court; a court's assertion of personal jurisdiction is proper only in the latter case. *See Kulko,* 436 U.S. at 93–94, 98 S.Ct. at 1697–98.

Turner attempts to distinguish *Kulko* because *Puhlman* initiated the proceeding in superior court, thereby "purposefully availing" himself of the Alaska court. The question becomes whether Puhlman, in seeking to enforce the Texas Order in Alaska, "purposefully availed" himself of the Alaska court, thereby subjecting himself to the long-arm jurisdiction of Alaska. This is an issue of first impression in Alaska. The Supreme Court of California answered this question in the negative. In *Kumar v. Superior Court,* 32 Cal.3d 689, 186 Cal.Rptr. 772, 781–82, 652 P.2d 1003, 1012–13 (1982),[5] the court held that if a nonresident parent is forced to employ the courts of the forum state to enforce visitation rights pursuant to an out-of-state decree, the nonresident will not be subject to the state's long-arm jurisdiction. Puhlman argues that he was forced to avail himself of the Alaska court in the enforcement proceeding and should not be subject to personal jurisdiction in a collateral support modification proceeding.

This court is guided by the principle that due process of law requires "'minimum con-

tacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Glover,* 745 P.2d at 1367 (quoting *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984)). This court has deemed it fair to exercise personal jurisdiction where "the defendant's contacts with the forum are substantial enough that the defendant could reasonably anticipate being haled into court...." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)). In this regard the distinction between enforcement of the visitation order and modification of the support order is important. Had Puhlman sought to register the Texas Order in Alaska in order to modify it, e.g., to decrease child support or increase visitation rights, then he reasonably could expect to be brought before the Alaska court on the cross-motion to modify the Texas Order. However, because Puhlman sought only to *enforce*[6] the Texas Order, he could not reasonably expect to be before the Alaska court on the cross-motion.

Indeed, fairness was the guiding principle for the United States Supreme Court in *Kulko* and the Supreme Court of California in *Kumar*:

> Principles of fairness preclude the exercise of personal jurisdiction where connection with the state resulted from an effort to encourage visitation with the non-custodial parent.... [The father] was virtually forced into the California court because [the mother] denied him his visitation rights. It would be grossly unfair to allow her now to claim that he thereby established "minimum contact" sufficient to establish personal jurisdiction.

*Kumar,* 652 P.2d at 1012–13 (citation omitted). Both cases noted the strong importance of promoting visitation by non-custodial parents. This policy would be undermined by subjecting to jurisdiction in another state

---

5. *Kumar* is similar to this case. The couple was divorced in New York in 1974. The mother was awarded custody of the only child. In 1979 she and the child moved to California without informing the father. The father filed the New York decree in California court along with a writ of habeas corpus. The court enforced the father's visitation rights. When the mother sought

to modify the order in the California court, the father successfully defended, based on the court's lack of personal jurisdiction. *Kumar,* 652 P.2d at 1004.

6. Puhlman's application for a Writ of Assistance makes no mention of modification.

parents who actually visit their children or seek to enforce visitation rights in that state. *Kulko,* 436 U.S. at 98, 98 S.Ct. at 1700; *Kumar,* 652 P.2d at 1013 n. 19.

Puhlman argues that it would be unfair for the superior court to exercise personal jurisdiction over him:

> If Puhlman wanted to see his children . . . he had to come to Alaska. Even at that, Turner made it clear that he was wasting his time because she was not going to give him the children to take back to Germany in accordance with the Texas decree. Puhlman therefore had to domesticate the Texas decree in Alaska in order to physically get custody of the children to take them out of state.

We agree. The superior court concluded that the children were improperly withheld from Puhlman. Turner thus placed Puhlman in danger of forfeiting 1992 summer visitation with the children. He was forced to seek relief in the Alaska court to enjoy that visitation.

### III. CONCLUSION

Federal and state long-arm jurisprudence protects due process rights by ensuring that courts exercise personal jurisdiction consistent with " 'traditional notions of fair play and substantial justice.' " *Glover,* 745 P.2d at 1367 (quoting *Calder,* 465 U.S. at 788, 104 S.Ct. at 1486). We conclude that considerations of fairness preclude the Alaska court from exercising personal jurisdiction over a nonresident parent who seeks only to enforce visitation rights awarded in an out-of-state judgment.

For the foregoing reasons we VACATE the order of the superior court and direct the superior court to GRANT Puhlman's motion to dismiss Turner's cross-motion to modify child support.

BRYNER, J. Pro. Tem.,* not participating.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.
**1.** The record does not indicate when the motion resulting in the modification order of July 27,

MATTHEWS, Justice, dissenting.

### I. FACTS

The facts necessary for an understanding of the issues on this petition follow. Terrence Puhlman and Carol Turner were divorced in Texas on September 15, 1988. They were both residents of Texas. Carol was awarded custody of their two children. Terrence was awarded visitation rights which included summer vacation visits at his residence. Terrence was ordered to pay child support.

On or about April 15, 1989, Carol and the children moved from Texas. They have lived in Alaska since July 21, 1989.

On July 27, 1990, the Texas District Court modified the divorce decree concerning visitation and support. In particular, Terrence was required to pay the sum of $296 per month for the support of both children except during the summer months "when he has possession of the children," and Carol was required to pay the costs for the children to travel to Terrence's home at the beginning of each vacation.[1]

In 1992 Terrence was stationed in Germany, although Texas was still his legal residence. The present case was initiated by Terrence on July 2, 1992, when he moved in the superior court for a writ of assistance requiring Carol to turn over the children to him for summer visitation pursuant to the terms of the Texas decree. On July 6th Carol filed a pleading entitled "Opposition to Emergency Motion for Writ of Assistance and Cross Motion to Modify Visitation and for Other Relief." The cross motion asked for the following modifications of the visitation aspects of the Texas decree:

1. That Terrence be required to post bond ensuring the return of the children to Alaska prior to the exercise of any visitation in view of his alleged "wilful and unjustified failures to return the children for the past two years. . . ."

2. That Terrence be required to pay round trip tickets for the children's visi-

---

1990, was filed. Neither party contends that the Texas court lacked jurisdiction to make the order.

tation "[i]n view of [Carol's] nominal income."

Carol also asked that child support be increased pursuant to Alaska Civil Rule 90.-3(a)(2)(B) to twenty-seven percent of Terrence's net income and that support abate to fifty percent of the normal monthly amount during summer visitation periods pursuant to Civil Rule 90.3(a)(3).

A hearing was held on July 6, 1992. At the hearing the trial court granted the writ of assistance and the children were delivered to Terrence for visitation. After inquiring as to whether Terrence had continuing contacts with the state of Texas and learning that Terrence was still a resident there, the court ruled that Texas had continuing jurisdiction to modify visitation and that Alaska lacked modification jurisdiction. The court deferred ruling on the subject of jurisdiction to modify the Texas decree concerning child support until the parties were able to brief that question. After considering the parties' briefs the court ruled that Alaska had jurisdiction to modify the Texas decree concerning child support. Subsequently Terrence filed a child support guidelines affidavit, indicating that the amount of child support he should pay under Civil Rule 90.3(a)(2)(B) was $456 per month.

## II. *DISCUSSION*

This case got off to a bad start when the court ruled that it lacked jurisdiction to modify the visitation and custody aspects of the Texas decree. Had the original decree come

from almost any other state, this ruling would have been accurate.

Most states exercise "significant connection" jurisdiction under their equivalent to section 3(a)(2) of the Uniform Child Custody Jurisdiction Act (UCCJA).[2] This means that the state that issues the original decree has exclusive jurisdiction to modify the decree as to custody,[3] even though the custodial parent and the children have established a "home state" residence in another state, so long as the non-custodial parent still has a significant connection with the original state and substantial evidence concerning the children·is available there. These are vague standards. The federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1980) (PKPA), has added a measure of certainty by providing that significant connection jurisdiction for modification purposes exists where the original state "remains the residence of ... any contestant" *and* "such court has jurisdiction under the law of such state." 28 U.S.C. § 1738A(d) and (c)(1).

Texas law is unusual because it conditions the exercise of significant connection jurisdiction on a showing that no other state has "home state" jurisdiction. Tex.Fam.Code. Ann. § 11.53(a)(2) (West 1994). Since Alaska became the home state of the children six months after they moved to Alaska in July of 1989, Texas no longer had significant connection jurisdiction as of the commencement of the attempted modification proceedings in Alaska in July 1992.[4] The trial court therefore should have ruled that Alaska does have modification jurisdiction concerning custody

---

**2.** Sections 3(a)(1) and (2) of the UCCJA provide:

A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
  (1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
  (2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at

least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]

**3.** "Custody" includes determinations of visitation rights. UCCJA § 2(2), 9 U.L.A. 133 (1988); AS 25.30.900(2); 28 U.S.C. § 1738A(b)(3).

**4.** Alaska also does not exercise significant connection jurisdiction where children have a new home state, as Alaska has not enacted a subsection equivalent to section 3(a)(2) of the UCCJA. *Bock v. Bock,* 824 P.2d 723, 724 (Alaska 1992); *Baumgartner v. Baumgartner,* 788 P.2d 38, 40 (Alaska 1990).

and visitation.[5]

If the trial court had correctly ruled that Alaska has modification jurisdiction concerning custody, the case for personal jurisdiction over Terrence regarding child support would stand before us in a different light. The question would be whether a state having and exercising jurisdiction under the UCCJA and PKPA system to modify a decree from another state concerning custody may also entertain a motion to modify the child support aspects of the same decree. As the majority opinion notes, the parties have not raised this issue and the majority opinion expresses no view concerning it. However, since hanging in the balance are prospective payments of child support which will extend well into the next century, I would order supplemental briefs on this issue.[6] *See Vest v. First National Bank of Fairbanks*, 659 P.2d 1233, 1234 n. 2, *reh'g granted*, 670 P.2d 707 (Alaska 1983) ("Where ... an issue that has not been raised involves a question of law that is critical to a proper and just decision, we will not hesitate to consider it, particularly after calling the matter to the attention of the parties and affording them the opportunity to brief the issue.").

Although a final decision must be withheld, I suggest that a substantial case can be made that the same contacts and interests, and the absence of contacts and interests elsewhere, which have given Alaska exclusive jurisdiction over custody, suffice to justify the assertion of personal jurisdiction over the non-custodial parent on child support issues. In support of this view the following points can be developed:

(1) Alaska, as the home state of the children, has a vital interest in ensuring that the children residing in Alaska are adequately supported. *Kulko v. California Superior Court*, 436 U.S. 84, 98, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978); *Perry v. Newkirk*, 871 P.2d 1150 (Alaska, 1994); Commentary to Civil Rule 90.3, § IB.

(2) Custody, visitation and child support are inseparably related. In general, the more visitation a non-custodial parent is awarded, the less child support the non-custodial parent has to pay. Civil Rule 90.-3(a)(3), (b). The converse is also true. A modification in visitation, or in shared custody, will therefore often necessarily require a modification in child support. Requiring the party who receives the benefit of a visitation or custodial change in a forum having jurisdiction under the UCCJA/PKPA system to file a separate action in another forum for the child support changes made necessary by the visitation or custodial changes has a number of undesirable consequences. It is economically wasteful. The integration of custody and visitation issues with child support guidelines has not been achieved without complexity. Out-of-state courts may have difficulty in applying another state's guidelines or they may be reluctant to do so.[7]

(3) *Kulko* can be distinguished. The Court did not address the question whether the forum state had jurisdiction under the UCCJA. This is not surprising, as the underlying action in *Kulko* was begun in 1976 and most jurisdictions had not adopted the UCCJA before 1977. Congress added force to the jurisdictional system of the UCCJA by enacting the PKPA in 1981. The broad acceptance of the UCCJA/PKPA system is, in part, an indication that its jurisdictional rules are fair and do not offend "traditional notions of fair play and substantial justice." This general consensus may carry over to child support questions because of the inter-relatedness of custody and child support. Anoth-

---

**5.** That the court did not so rule is understandable since neither counsel pointed out the fact that Texas law relinquishes modification jurisdiction in favor of the new home state.

**6.** The issue is also not unique to the parties, or to Texas decrees. It will arise most commonly when Alaska is the home state of the children and one of the parties and the non-custodial parent is not an Alaska resident and no longer is a resident of the state in which the original decree was entered.

**7.** Choice of law would seem clearly to indicate that the law to be applied is the law of the home state of the children. *See Kulko*, 436 U.S. at 98, 98 S.Ct. at 1700 (noting that the presence of the children and one parent in a particular state favors the application of that state's law to determine child support awards); Restatement (Second) of Conflict of Laws § 6 (1971) (listing factors relevant to choice of law determination).

er legal development that has taken place subsequent to *Kulko* is the enactment in all jurisdictions of child support guidelines pursuant to the Child Support Enforcement Amendments of 1984 (Pub.L. No. 98–378, 98 Stat. 1305 (codified as amended in scattered sections of 26 U.S.C. & 42 U.S.C.)) and the Family Support Act of 1988. (Pub.L. No. 100–485, 102 Stat. 2343 (codified as amended in scattered sections of 26 U.S.C. & 42 U.S.C.).) Under these guidelines, discretion concerning the amount of child support to be awarded is greatly reduced and, child support decrees are subject to frequent formulaic modifications as the income of the parents changes.

In summary, rather than reverse, I would order the parties to brief the question of whether the due process clause of the Fourteenth Amendment allows the assertion of personal jurisdiction over a non-resident parent for the purpose of adjusting an out-of-state decree of child support in cases where Alaska has and is exercising jurisdiction under the UCCJA/PKPA to modify the same decree insofar as it relates to custody and visitation.