NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| PATRICK DALE BURTON-HILL,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-13223<br>Trial Court No. 4FA-18-00521 CR<br><br>O P I N I O N<br><br>No. 2713 — November 5, 2021 |
| JERALD DWAYNE BURTON JR.,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-13262<br>Trial Court No. 4FA-18-00520 CR |
| MARCUS DJAUN HOWARD,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-13263<br>Trial Court No. 4FA-18-00525 CR |

Motion for reconsideration of this Court's order directing the parties to file supplemental briefs in the underlying appeals.

Appearances: Marilyn J. Kamm and Margo Knuth, Anchorage, for Appellant Burton-Hill; Michael Horowitz, Kingsley, Michigan, for Appellant Burton; and Elizabeth D. Friedman, Redding, California, for Appellant Howard — all under contract with the Office of Public Advocacy. Donald Soderstrom and Eric A. Ringsmuth, Assistant Attorneys General, and Tamara DeLucia, Solicitor General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Wollenberg, Judge, and Mannheimer, Senior Judge.[*]

PER CURIAM.

Following a joint trial, the defendants in these three appeals — Patrick Dale Burton-Hill, Jerald Dwayne Burton Jr., and Marcus Djaun Howard — were convicted of riot, AS 11.61.100(a), and third-degree criminal mischief, AS 11.46.482(a), based on an incident that occurred at the Fairbanks Correctional Center. Each defendant's appeal has been briefed, and all three appeals are currently pending before this Court.

Each of the three co-defendants has raised issues which require this Court to interpret the statutory definition of riot — to identify and clarify the elements of that crime under the definition codified in AS 11.61.100(a). The specifics of the defendants' claims, and why those claims require this Court to interpret Alaska's riot statute, are described in the following footnote. [1]

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

[1] All three defendants argue that the jury should not have been instructed on the principles of "accomplice liability" — *i.e.*, the principles of vicarious liability codified in AS 11.16.110(a) — because, according to the defendants, the riot statute defines the offense

(continued...)

2713

Based on our review of the trial proceedings, and based on our preliminary research into the legislative history and meaning of the riot statute, we concluded that the issues raised by the defendants present unanswered foundational questions about the meaning of the terms and phrases used in Alaska's riot statute — and that, depending on the answers to these questions of statutory interpretation, the jury at the defendants' trial may have been misinformed regarding the elements of riot. We further concluded that

---

[1] (...continued)
in such a way that the normal principles of vicarious liability do not apply. In particular, the defendants argue that when AS 11.61.100(a) speaks of six or more persons "participating" with each other in "tumultuous and violent conduct", the statute requires proof that six or more offenders each *personally* engaged in "tumultuous and violent" conduct at the same time.

In addition, defendant Burton argues that the riot statute requires proof, not only that six or more people engaged in tumultuous and violent conduct at the same time and place, but also that these people were knowingly working in concert.

Defendant Burton-Hill argues that the evidence presented at trial, even when viewed in the light most favorable to the jury's verdict, fails to support the jury's finding that he engaged in conduct that was "tumultuous and violent" within the meaning of the riot statute, AS 11.61.100(a).

Defendant Howard argues that the riot statute's reference to "tumultuous" conduct is unconstitutionally vague, and that the trial court's jury instruction on the meaning of "tumultuous" defined this term so broadly that it encompassed innocent conduct. Howard also argues that, even viewing the evidence in the light most favorable to the jury's verdict, the State failed to prove that he engaged in "violent" conduct as that term is used in the riot statute — or, that if his conduct fell within the statutory definition of "violent", then that statutory definition is unconstitutionally vague.

Defendant Burton raises the additional argument that, given the definitions of "riot" and "criminal mischief" under Alaska law, if a person commits both riot and criminal mischief during the same incident, Alaska's double jeopardy clause prohibits a court from imposing separate convictions and sentences for these two crimes.

the parties' briefs fail to adequately address key aspects of the legislative history of the riot statute.

We therefore issued an order which summarized our preliminary research and which directed the parties to file supplemental briefs on these questions of statutory interpretation.

The State now asks us to rescind our order for supplemental briefing. According to the State, if the discussion in the three defendants' briefs is insufficient to decide these issues of statutory interpretation, then — as a matter of law — this Court is required to rule that the defendants have waived all of these issues due to inadequate briefing.

The State's contention is incorrect. Our authority to order supplemental briefing on questions implicitly raised but not directly addressed in the parties' briefs is well-established under existing Alaska case law. Indeed, under Alaska law, an appellate court may even address issues beyond those raised by the parties, if the resolution of those issues is necessary to a proper and just decision of the case.

The leading case on this point of law is the Alaska Supreme Court's decision in *Vest v. First National Bank of Fairbanks*, 659 P.2d 1233 (Alaska 1983). In *Vest*, the superior court granted First National Bank's motion for summary judgment and dismissed Vest's cause of action, after finding that this cause of action was governed by a two-year statute of limitations and that Vest's lawsuit had been filed outside this limitation period. [2] On appeal, Vest did not dispute that the two-year statute of limitations was applicable to his case; instead, he argued that the bank was estopped from

---

[2] *Vest*, 659 P.2d at 1234.

raising a statute of limitations defense because (according to Vest) the bank had fraudulently concealed the facts that gave rise to Vest's cause of action. [3]

Rather than decide the case on the issues presented by the parties on appeal, the Alaska Supreme Court directed the parties to file supplemental briefing on whether Vest's cause of action was actually governed by a different, six-year statute of limitations. [4] After receiving that briefing, the supreme court held that Vest's cause of action was governed by the six-year statute of limitations, and the supreme court therefore reversed the superior court's grant of summary judgment. [5]

In reaching this resolution of the case, the supreme court acknowledged that, ordinarily, an appellate court "will not consider an issue unless it [was] argued in the trial court and properly raised on appeal." [6] But the supreme court explained that when the unraised issue "involves a question of law that is critical to a proper and just decision," an appellate court "will not hesitate to consider it, particularly after calling the matter to the attention of the parties and affording them the opportunity to brief the issue." [7]

Thus, *Vest* expressly recognizes that appellate courts have the authority to raise and resolve an issue of law that has not been raised by the parties, when resolution of this issue "is critical to a proper and just decision" and when the court gives the parties

---

[3] *Ibid.*

[4] *Id.* at 1234 n. 2.

[5] *Id.* at 1234.

[6] *Id.* at 1234 n. 2.

[7] *Id.*

an opportunity to address the issue. Both the supreme court and this Court have invoked this principle numerous times since *Vest* was decided. [8]

Even when the members of the supreme court have disagreed as to whether the court should exercise this authority in a particular case, the dissenters have never disputed the *existence* of this authority. [9]

---

[8] *See*, *e.g.*, *Martin v. Martin*, 303 P.3d 421, 426–27 (Alaska 2013) (holding that the superior court committed plain error in allowing a parent to deduct his insurance premium from his gross income, even though this ruling was not challenged on appeal); *Cragle v. Gray*, 206 P.3d 446, 450–51 (Alaska 2009) (deciding whether a particular statute applied to the case, even though neither party argued that the statute applied; the supreme court concluded that the applicability of the statute was a "question of law that is critical to a just and proper resolution of this case", and the court gave the parties an opportunity to file supplemental briefs on this issue); *Morgan v. State*, unpublished, 2005 WL 901769 at *9 (Alaska App. 2005) (ordering supplemental briefing when the resolution of certain questions was "crucial to a fair decision" in the defendant's case); *Garner v. Division of Medical Assistance*, 63 P.3d 264, 268 n. 21 (Alaska 2003) (deciding whether the administrative agency failed to follow its own regulations, even though this claim had not been briefed on appeal, when the issue had been briefed in the superior court, and when this issue was "potentially determinative" of the case); *Gilmore v. Alaska Workers' Compensation Board*, 882 P.2d 922, 925 (Alaska 1994) (explaining that the supreme court ordered supplemental briefing on potential issues of equal protection and due process presented by AS 23.30.220(a) after the court concluded that these constitutional issues were "critical to a proper and just decision" in the case); *Hickel v. Halford*, 872 P.2d 171, 175 (Alaska 1994) (explaining that the supreme court ordered supplemental briefing because "sound reasons require[d] the consideration of an issue not raised by the parties"); *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 377 (Alaska 1984) (addressing the propriety of the superior court's ruling on a breach of contract claim, when the resolution of this claim was "critical to a proper and just decision", and when the parties had addressed the issue in supplemental briefs).

[9] *See*, *e.g.*, *Burke v. Houston NANA, L.L.C.*, 222 P.3d 851, 873 (Alaska 2010) (Matthews, J., dissenting); *Matter of C.A.S.*, 882 P.2d 1266, 1269 (Alaska 1994) (Compton, J., dissenting); *Puhlman v. Turner*, 874 P.2d 291, 297 (Alaska 1994) (Matthews, J., dissenting); *Clark v. Greater Anchorage, Inc.*, 780 P.2d 1031, 1038 (Alaska 1989) (Compton, J., dissenting); *Principal Mutual Life Insurance Co. v. Division of Insurance*, 780 P.2d 1023,

(continued...)

– 6 –

The cases cited in the preceding two footnotes represent only those cases in which *Vest* was explicitly cited by the appellate court. But there have been numerous other occasions when the Alaska Supreme Court and this Court have ordered or requested supplemental briefing without citing *Vest*. For two recent examples, see *Division of Elections v. Recall Dunleavy*, 491 P.3d 343, 365 (Alaska 2021) (explaining that, after the supreme court heard oral argument, the court requested supplemental briefing on a new legal issue); *State v. Myers*, 479 P.3d 840, 844 (Alaska App. 2020) (noting that this Court asked the parties to file supplemental briefing "on the proper interpretation of [a relevant] statute" when neither party "cited or discussed [this] statute in their original briefs").

Although this Court did not explicitly invoke *Vest* when we called for supplemental briefing in the three present cases, we wrote that "[the] defendants in these cases raise several issues that hinge, either directly or implicitly, on the definition of the offense of riot as codified in AS 11.61.100(a)." This was just another way of saying that the proper interpretation of AS 11.61.100(a) is — in the words of *Vest* — "critical to a proper and just decision" of these three cases.

For example, to obtain a conviction under the riot statute, the State must prove that at least six persons who were "participating" with each other engaged in "tumultuous" and "violent" conduct. As we explained earlier in footnote 1, the three defendants in the present cases argue that when AS 11.61.100(a) speaks of six or more

---

⁹ (...continued)
1031 (Alaska 1989) (Compton, J., dissenting); *Vest*, 659 P.2d at 1235 (Compton, J., dissenting).

In particular, *see Burke*, 222 P.3d at 873, and *Clark*, 780 P.2d at 1038, where the dissenting members of the court agreed that the supreme court was empowered to consider an issue of law that had not been argued if the resolution of this issue was critical to a proper and just decision of the appeal, but contended that this test had not been met.

persons "participating" with each other in "tumultuous and violent conduct", the statute requires proof that six or more offenders each *personally* engaged in "tumultuous and violent" conduct at the same time. In addition, defendant Burton argues that when the riot statute speaks of six or more people "participating" with each other, this means that the State must prove that these people were knowingly working in concert.

Moreover, one of the defendants (Burton-Hill) argues that the evidence presented at trial, even when viewed in the light most favorable to the jury's verdict, fails to support the jury's finding that he engaged in conduct that was "tumultuous and violent" within the meaning of the riot statute, AS 11.61.100(a). And another defendant (Howard) argues that the statutory terms "tumultuous" and "violent" are unconstitutionally vague, or else they are so broad that they encompass innocent conduct.

Accordingly, this Court must determine the correct interpretation of these various terms as they are used in the riot statute. This inquiry is "critical to a proper and just decision" of the defendants' cases — and, thus, our call for supplemental briefs is proper.

In its motion asking us to rescind our call for supplemental briefing, the State does not dispute this Court's conclusion that, in order to fairly resolve the issues raised on appeal, this Court must correctly interpret the definition of riot found in AS 11.61.100(a). Nevertheless, the State contends that we are legally forbidden from resolving any of these issues of statutory interpretation because the defendants have waived these issues through inadequate briefing.

But as we have just explained, the State's position is contrary to established Alaska law — the line of cases beginning with *Vest v. First National Bank of Fairbanks*. The State's motion contains no mention of *Vest*, or any of the cases that cite *Vest*, or any of the other Alaska cases that deal with the topic of supplemental briefing. Indeed, most of the cases cited in the State's motion simply repeat established rules governing the

preservation and waiver of issues, with no discussion of an appellate court's authority to order supplemental briefing.

To support its assertion that this Court has exceeded our authority, the State relies heavily on the United States Supreme Court's recent decision in *United States v. Sineneng-Smith*, 140 S.Ct. 1575 (2020). In *Sineneng-Smith*, the Supreme Court reversed a case where a panel of the Ninth Circuit injected a new constitutional issue (not raised by the parties) into the appellate litigation, and named three *amici curiae* (who previously had not been involved in the case) to brief and argue this new issue — effectively relegating the parties' attorneys to "a secondary role". [10] The Ninth Circuit ultimately ruled, in accord with the invited *amici*'s arguments, that the statute under which the defendant was prosecuted was unconstitutionally overbroad. [11]

The Supreme Court concluded that the Ninth Circuit had abused its discretion by "depart[ing] so drastically from the principle of party presentation" — the principle that the parties will frame the issues to be litigated, and that the courts will serve as "neutral arbiter of [the] matters the parties present." [12] Although the Supreme Court acknowledged that an appellate court "is not hidebound by [the parties'] precise arguments," the Supreme Court concluded that the Ninth Circuit's "radical transformation" of Sineneng-Smith's case "[went] well beyond the pale." [13] The Court therefore remanded the case for reconsideration by the Ninth Circuit, "shorn of the overbreadth

---

[10]   *United States v. Sineneng-Smith*, 140 S.Ct. at 1578.

[11]   *Ibid.*

[12]   *Id.*, 140 S.Ct. at 1578–79.

[13]   *Id.*, 140 S.Ct. at 1581–82.

inquiry interjected by the appellate panel", so that the litigation would again "bear[] a fair resemblance to the case shaped by the parties." [14]

The *Sineneng-Smith* decision did not announce a rule of federal constitutional law. Rather, *Sineneng-Smith* addressed and applied a rule of federal appellate procedure. It is therefore not binding on the courts of Alaska when we interpret our analogous procedural rule. [15]

Moreover, the general principle described by the Supreme Court in *Sineneng-Smith* — the principle that the parties to a lawsuit normally control the issues to be litigated — is consistent with Alaska law on this topic. See, for example, the Alaska Supreme Court's discussion of this point in *State v. Ranstead*, 421 P.3d 15, 21 (Alaska 2018): "Our adversary system of justice is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." [16]

But in its motion, the State takes the United States Supreme Court's explanation of this principle out of context — mistakenly suggesting that the principle of party control means that appellate courts are prohibited from seeking supplemental briefing on questions that are raised, but not adequately briefed, by the parties.

*Sineneng-Smith* established no such rule. As the Supreme Court expressly recognized in *Sineneng-Smith*, the principle of having the parties control the issues to be litigated "is supple, not ironclad", and "[t]here are ... circumstances in which a modest initiating role for a court is appropriate." [17]

---

[14]  *Id.*, 140 S.Ct. at 1581.

[15]  *See West v. Buchanan*, 981 P.2d 1065, 1070 (Alaska 1999).

[16]  Quoting *Greenlaw v. United States*, 554 U.S. 237, 243; 128 S.Ct. 2559, 2564 (2008).

[17]  *Sineneng-Smith*, 140 S.Ct. at 1579.

To illustrate its point that appellate courts can properly play "a modest initiating role", the Supreme Court attached an addendum to its opinion in *Sineneng-Smith* in which the Court detailed all of the cases between 2015 and 2020 in which the Court itself requested supplemental briefing from the parties or appointed *amici curiae* to argue legal issues that were inadequately addressed in the parties' briefs. As the Supreme Court explained in its addendum, the Court has often sought supplemental briefing "to clarify an issue or argument the parties raised" — including a case in which the Court ordered additional briefing on "the implications" of the parties' competing statutory interpretations. [18]

Thus, even if the *Sineneng-Smith* decision were binding on state courts, this Court's order for supplemental briefing in the three present cases fully comports with the United States Supreme Court's supplemental briefing practices, as manifested by the cases discussed in the *Sineneng-Smith* appendix. The Supreme Court has repeatedly called for supplemental briefing on issues that expand upon, or that are logically connected to, the issues already raised by the parties. Similarly, in the present three cases, this Court has asked the parties to address several legal questions which seemingly must be resolved if we are to reach a proper and just resolution of the issues that the defendants have *already* raised regarding their convictions for riot.

---

[18] *Sineneng-Smith*, 140 S.Ct. at 1582, citing *Carpenter v. Murphy*, 139 S.Ct. 626 (2018). *Carpenter* was a memorandum opinion which directed the parties, as well as the U.S. Solicitor General and the Muscogee Creek Nation, to file supplemental briefs addressing "(1) Whether any statute grants the state of Oklahoma jurisdiction over the prosecution of crimes committed by Indians in the area within the 1866 territorial boundaries of the Creek Nation, irrespective of the area's reservation status[, and] (2) Whether there are circumstances in which land qualifies as an Indian reservation but nonetheless does not meet the definition of Indian country as set forth in 18 U.S.C. § 1151(a)."

All of these considerations are sufficient reason for this Court to deny the State's request for us to rescind our supplemental briefing order. But there is one more consideration that needs to be addressed.

The State argues that if a criminal defendant (or their attorney) fails to adequately brief all necessary aspects of a claim of error, this Court has no authority to investigate the claim any further — either by asking the parties to file supplemental briefs or even, apparently, by conducting our own legal research. Instead, according to the State, this Court is under a legal duty to deny the defendant's claim on the ground that it is inadequately briefed.

Not only does the State's position contravene *Vest*, but it is especially problematic when, as in the three present cases, the claim of error concerns the sufficiency of the evidence to support a guilty verdict or the adequacy of the jury instructions on the essential elements of the crime.

As our supreme court declared more than fifty years ago in *Shafer v. State*, "a miscarriage of justice [occurs] if the evidence [presented at a defendant's trial is] not sufficient to support [the] guilty verdict" — and thus "it is the imperative duty of a court to see ... that [evidence] is offered which justifies a jury in finding [all] elements [of the charged crime]." [19]

The supreme court's decision in *Shafer* addressed the duty of trial courts to ensure that there is sufficient evidentiary support for a criminal conviction. *Shafer* holds that trial courts have an affirmative duty to ensure that there is a sufficient legal basis for every criminal conviction — even to the point of acting *sua sponte* if necessary to prevent such a "miscarriage of justice". [20]

---

[19] *Shafer v. State*, 456 P.2d 466, 467 (Alaska 1969).

[20] *Id.* at 467–68.

(We note that prosecutors have a similar duty. In the Comment to Alaska Professional Conduct Rule 3.8 ("Special Responsibilities of a Prosecutor"), our supreme court has endorsed the principle that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate" — and that "[t]his responsibility carries with it specific obligations to see that ... [a defendant's] guilt is decided upon the basis of sufficient evidence [to prove the crime].")

Trial courts also have a duty to instruct the jury on "all matters of law ... necessary for the jury's information in giving their verdict."[21] Indeed, as our supreme court has explained, it is the trial judge, not counsel, who "bears the primary responsibility for instructing the jury."[22]

We have previously explained that jury instructions are plainly erroneous when "the erroneous instruction or lack of instruction creates a high likelihood that the jury followed an erroneous theory, resulting in a miscarriage of justice."[23] And when this Court holds that the jury instructions in a criminal trial amounted to plain error, we are saying, in essence, that the trial court should have acted *sua sponte* to correct the instructions and thus prevent a miscarriage of justice.

In the three cases presently before this Court, we are faced with the appellate versions of these same problems that trial courts have an affirmative duty to notice and correct. Our preliminary research into the legislative history of Alaska's riot statute suggests that there is a significant possibility that the jury found the defendants guilty of riot based on jury instructions that erroneously defined the elements of that crime. There is also a corresponding possibility that the evidence presented at trial was

---

[21] Alaska Criminal Rule 30(b).

[22] *Khan v. State*, 278 P.3d 893, 900 (Alaska 2012).

[23] *Dobberke v. State*, 40 P.3d 1244, 1247 (Alaska 2002).

insufficient (under a correct understanding of the elements of riot) to support one or more of the convictions in these three cases. Thus, there is a possibility that one or more of the defendants will spend years in prison for a crime that the State has yet to properly prove (because the jury instructions misdescribed the elements of riot).

The State urges us to ignore these problems. In fact, the State argues that we have absolutely no authority to look into these problems — because, according to the State, (1) if we conclude that supplemental briefing is required, then it necessarily follows that the defendants have failed to adequately brief their claims, and (2) the law requires us to treat inadequately briefed claims of error as waived.

But given the affirmative duty that Alaska law places on trial courts to ensure the legal sufficiency of the evidence in a criminal case, and to properly instruct the jury on the elements of the crime, it is implausible to assert that appellate courts lack even the *authority* to look into these problems. Rather, if we are to uphold the principles set forth in *Vest*, as well as the principles underlying the judicial duty to see that juries are properly instructed and that criminal convictions are supported by legally sufficient evidence, this Court must have the authority to call for supplemental briefing when substantial questions are raised regarding the proper interpretation of the charging statute and these questions are not adequately briefed.

For all these reasons, we deny the State's motion asking us to rescind our order for supplemental briefing. However, because the effective date of that order has been delayed, we now revise the briefing schedule as follows:

1. The briefs of the three defendants shall be filed by December 20, 2021.

2. The State's brief shall be filed 30 days thereafter.

3. These filing dates may be extended for good cause.

4. No reply briefs will be allowed unless ordered by this Court.

Entered at the direction of the Court.